IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROGER BROCKINTON,                             *
                                              *
              Plaintiff,                      *
                                              *
vs.                                           *        No. 4:05CV00954 SWW
                                              *
THE CITY OF SHERWOOD, ARKANSAS,               *
a body Public; KEL NICHOLSON,                 *
Individually and in his Official Capacity as  *
Chief of Police for Sherwood, Arkansas;       *
JOHN H. SCOTT, Individually and in his        *
Official Capacity ; ALEXANDER KILGORE,        *
Individually and in his Official Capacity;    *
JERRY D. BRADFORD, Individually and in        *
his Official Capacity; CHRISTOPHER R.         *
CONE, Individually and in his Official        *
Capacity; VERNON D. BLOCKER,                  *
Individually and in his Official Capacity;    *
EDDIE P. ALVIS, Individually and              *
in his Official Capacity; JAMES S.            *
CALHOUN, Individually and in his Official     *
Capacity; THE COUNTY OF VAN BUREN,            *
ARKANSAS, a body Public; SCOTT                *
BRADLEY, in his Official Capacity as Sheriff  *
of Van Buren County, Arkansas; RUSSELL        *
PRIDGEN, Individually and in his Official     *
Capacity as the former Sheriff of Van Buren   *
County, Arkansas; and RANDY GURLEY,           *
Individually and in his Official Capacity;    *
                                              *
              Defendants.                     *

**Memorandum Opinion and Order**

Plaintiff Roger Brockinton brings this action pursuant to 42 U.S.C. § 1983, alleging violation

of his rights to "liberty, privacy, and property as guaranteed by the 4th and 14th Amendments to the

United States Constitution," art. VII, § 22 of the Arkansas Constitution, and Rule 15 of the Arkansas

Rules of Criminal Procedure.[1]  He also asserts state law claims of false arrest and imprisonment, malicious prosecution, conversion, and outrage. The matter is before the Court on defendants' motions for summary judgment to which plaintiff responded.  Separate Van Buren County defendants filed a reply and a response to plaintiff's supplement to his response.  After careful review of the motions, responses, reply, briefs, statements of undisputed facts, and exhibits, the Court finds the motions should be granted.

**Background**

According to plaintiff, Mike Wiley purchased a 1966 Buehler Jet boat from Charles Mills sometime in 2000.  The boat was either the original or an exact replica of the one used in a James Bond movie, "Thunderball."  Sometime in 2001, Wiley and his friend Glen Prater, took the boat to plaintiff's house in Sherwood, Arkansas, to store it because, according to Brockinton, Wiley did not trust his girlfriend, Pamela Murphy, with it.  Subsequently, Wiley borrowed some money from plaintiff and told plaintiff to hold the boat as security for the loan.  Before he fully repaid the loan, Wiley died in an automobile accident.

Murphy had been living with Wiley in a residence on Resort Road in Higdon, which is located in Van Buren County, Arkansas.  On or about July 12, 2002, after Murphy returned to the Higdon  residence from Wiley's funeral in North Little Rock, Arkansas, she called the Van Buren County Sheriff's Department ("VBCSD") and deputy Randy Gurley was dispatched to Murphy's residence.  Gurley testified Murphy told him, and he observed, that the gate had been cut and her fence was down.  Murphy told Gurley that a neighbor, Keith Bradford, told her two men had come

---

[1]Am. Compl. ¶ 23.

and taken two boats and a lawn mower.[2]  One of the men was identified by Bradford as Tom Travis.[3]

Murphy showed Gurley a bill of sale and a boat registration in the name of Charles Mills and Linda

Mills.  Gurley said he contacted Charles Mills from Murphy's residence and asked him if he had

sold a boat to Wiley and Murphy, and Mills confirmed he did.

Deputy Gurley completed a report on the incident and turned it over to his sergeant.  Gurley

said either he or his sergeant entered the boat as stolen into the Arkansas Crime Information Center

("ACIC").  Murphy later informed Gurley that Wiley's sister, Penny Guess, had located the boat in

Sherwood, Arkansas. Gurley advised Murphy to contact the Sherwood Police Department ("SPD").

On July 14, 2002, Murphy visited the SPD and gave separate defendant John Scott, an

investigator, a copy of the written statement she had given the VBCSD.   According to Scott,

Murphy claimed the boat was stolen from her residence and that it had been located on Hillcrest

Road in Sherwood.  Scott further testified that John Aldridge, who accompanied Murphy to the SPD,

said he had driven by 600 Hillcrest in Sherwood and identified the boat as belonging to Murphy and

Wiley.  Also on July 14, Guess gave Scott a statement saying  she had driven by 600 Hillcrest and

confirmed the boat belonging to Murphy and Wiley was at that location and the resident's first name

is Roger.  Scott said he ran the boat hull number provided by Murphy, and ACIC showed it stolen

out of Van Buren County.

Sherwood police officers went to 600 Hillcrest and observed a boat behind a red truck in the

backyard.  Scott compared it to a photograph provided him by Murphy and it appeared to be the

---

[2]The only boat relevant to this lawsuit is the "Thunderball" boat with Arkansas registration number 109 AHP and hull number 94B6006.

[3]Tom Travis says he is a personal friend of Brockinton and has represented both Wiley and Murphy on legal matters.  *See* Aff., Pl's. Resp. to Sherwood Defs.' Mot. Summ. J.

same boat.  Because no one was home, Scott obtained a search and seizure warrant on July 14, 2002, and officers executed the warrant.  Officers ran the boat hull number which showed it to be the one reported by the VBCSD as stolen.  The boat was taken into evidence and then released to Murphy pursuant to an ACIC message from the VBCSD.

When Brockinton returned home and found the warrant on his door, he called Scott, who told Brockinton he was going to be arrested.  Brockinton called Tom Travis, who secured a bond.  Brockinton then went to the SPD and turned himself in.  It took one to two hours to process Brockinton and then he left.  The charges eventually were dismissed.

Brockinton asserts the SPD did not have jurisdiction to issue an arrest or search and seizure warrant because the alleged crime occurred in Higdon which is in Cleburne County.[4]  He claims the City of Sherwood is liable for the defendant officers' unconstitutional conduct because it failed to train and supervise its police officers.  Plaintiff contends that Van Buren County deputy sheriff Randy Gurley should have known Murphy's allegation of theft was false, failed to use proper procedures in handling the allegation, and should have known he had no authority to handle a matter outside his jurisdiction.  Brockinton asserts Russell Pridgen, former sheriff of Van Buren County, Arkansas, failed to train and supervise Gurley, and the VBCSD has a policy, custom, and practice not to train or supervise its officers.

Brockinton seeks compensatory and punitive damages for violation of his constitutional rights, false arrest, false imprisonment, malicious prosecution, outrage, conversion, trespass, and destruction of property.  He also seeks injunctive relief.

### Standard of Review

---

[4]Plaintiff now admits the purported theft occurred in Van Buren County.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

 "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

## 1.  Van Buren County Defendants

Brockinton sues Van Buren County, Arkansas; Scott Bradley, in his official capacity as Sheriff of Van Buren County; Russell Pridgen, individually and in his official capacity as former Sheriff of Van Buren County;[5] and Randy Gurley, individually and in his official capacity.   These defendants move for summary judgment on the grounds that the evidence shows the address was in Van Buren County; the theory of *respondeat superior* does not apply to § 1983 actions; plaintiff has no proof of his allegations; they are entitled to qualified immunity on the individual capacity claims; and there is no proof in support of punitive damages.

### a.  Individual Capacity Claims

Plaintiff asserts Pridgen, who was Sheriff of Van Buren County at the time of the incident, failed to adequately train and/or supervise Gurley.[6]  He contends Gurley knew or with due diligence should have known Murphy's report was false but failed to use proper police procedures in handling her allegations.  Pridgen and Gurley argue they are entitled to qualified immunity.[7]

"Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."  *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006)(citation omitted).  "To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting

---

[5]Separate defendant Pridgen, who was added as a defendant in plaintiff's amended complaint, contends he was not properly served with summons and complaint in this case.  He did not file an answer. *See* Reply to Pl's. Resp. to Defs.' Mot. Summ. J. and Resp. to Pl's. Suppl.

[6]To the extent plaintiff asserts Pridgen is individually liable under a doctrine of respondeat superior, such claims must be dismissed because a supervisor may not be held liable under § 1983 on the basis of respondeat superior. *Tlamka v. Serrell,* 244 F.3d 628, 635 (8th Cir. 2001); *Miller v. Compton,* 122 F.3d 1094, 1100 (8th Cir. 1997).

[7]Qualified immunity is a defense only against a claim in one's individual capacity.  *See, e.g., Bankhead v. Knickrehm,* 360 F.3d 839, 844 (8th Cir. 2004).

the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene County, Arkansas,* 438 F.3d 845, 850 (8th Cir. 2006).  To survive a summary judgment motion based on qualified immunity, a plaintiff must assert a violation of a constitutional right, show that this right is clearly established, and raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right.  *Habiger v. City of Fargo,* 80 F.3d 289, 295 (8th Cir.1996).

Brockinton claims Gurley violated his rights to due process when he failed to properly investigate Murphy's stolen property complaint.  "Negligent failure to investigate other leads or suspects does not violate due process.  Even allegations of gross negligence would not rise to the level of a constitutional violation."  *Wilson v. Lawrence County,* 260 F.3d 946, 955 (8th Cir. 2001). Only reckless or intentional failure to investigate other leads offends a defendant's due process rights.  *Id.  See also Whitley v. Seibel,* 613 F.2d 682, 686 (7th Cir. 1980) (while negligent acts in an investigation do not violate due process, intentional acts do).

Brockinton offers no evidence that Gurley acted in a reckless or intentional manner.  He offers no evidence to dispute Gurley's testimony that when he took the stolen property report from Murphy, she showed him a bill of sale and a boat registry of Charles and Linda Mills, and that he contacted Charles Mills by phone who confirmed he sold a boat to Wiley and Murphy.  While Brockinton says Mills stated he never talked to Gurley, Mills' affidavit does not contain such a statement.  *See* Pl's. Resp. to Van Buren County Defs.' Mot. Summ. J., Ex. C.  Charles Mills states he sold the boat to Wiley in 2000 and gave him a title to the boat in Wiley's name and, to his

knowledge, " Pamela Wiley was not involved in the sale." He says he did not recall giving Wiley a bill of sale, but if he did, it was not the one the Captain Reece with the VBCSD showed Mills in the later part of 2002. Mills says the signature on the bill of sale Reece had, and presumably the one Murphy showed Gurley, was a forgery. *Id.* There is no evidence Gurley knew or should have known Mills' signature was forged.

Brockinton also asserts Gurley violated his due process rights by advising the SPD to release the boat to Murphy even though it was registered to Mills. *See id.,* Ex. F. Plaintiff supports this claim with Pridgen's testimony that when the SPD contacted the VBCSD about the recovered boat being registered to Mills, Gurley should have held the boat and done more investigation. *See* Pl's. Resp. to SPD Defs.' Mot. Summ. J., Part 23 at 48. [8]

The Court finds no reasonable factfinder could conclude that Gurley violated plaintiff's due process rights by intentionally and recklessly failing to investigate Murphy's claim her boat had been stolen or turning the boat over to Murphy once it had been recovered. Even if his conduct were negligent or grossly negligent, such conduct does not implicate Fourteenth Amendment protections. *See Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986). Because the Court determines there is no evidence to support a valid due process claim against Gurley, it is unnecessary for the Court to address whether plaintiff's due process rights were clearly established. Nevertheless, the Court finds, viewing the evidence in the light most favorable to plaintiff, that there is no genuine issue of material fact concerning whether it would have been clear to a reasonable officer that what he was doing violated those rights.

---

[8]Gurley does not recall talking to anyone from the SPD. *See* Van Buren County Defs.' Resp. to Supp. to Pl's. Resp. to Mot. Summ. J, Ex. A at 20.

Brockinton asserts Pridgen is individually liable for failure to train and/or supervise Gurley. Because the Court finds Gurley's actions did not deprive Brockinton of his constitutional rights, Pridgen cannot be liable for failure to train and/or supervise Gurley. Even assuming Gurley's action were unconstitutional, there is no evidence to support Brockinton's individual liability claims against Pridgen.

> A supervisor may be held liable if
>
> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

*Tlamka v. Serrell,* 244 F.3d 628, 635 (8th Cir. 2001)(quoting *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996)).

According to his testimony, Gurley began working in law enforcement in 1977. He successfully completed training at the Arkansas Law Enforcement Training Academy ("ALETA") in 1979. After being out of law enforcement for a number of years, he went to work for the VBCSD in 2001 as a deputy after completing a training course at the Black River Law Enforcement Academy. He testified it was a state requirement that after you have been out of law enforcement for a certain period of time, you have to go back for training. Gurley testified he was promoted to sergeant in 2002 and lieutenant in 2003 or 2004. *See* Van Buren County Defs.' Resp. to Supp. to Pl.'s. Resp. to Defs.' Mot Summ. J., Ex A.

Former Sheriff Pridgen testified that officers receive training at ALETA on how to properly investigate and determine whether there are reasonable grounds to suspect a crime has been committed and whether there is probable cause for an arrest. *See* Pl.'s. Resp. to Sherwood Defs.'

Mot. Summ. J., Part 18 at 12-13. He said there is a statewide police procedure taught at ALETA on how to take a theft report, how to file a report, and when to enter it into ACIC, *id*. at 14-16, and he expected his officers to follow the training they received at ALETA. *Id.* at 21. Pridgen testified that his "officers never displayed any kind of reckless behavior," *see* Pl's. Resp. to Sherwood Defs.' Mot. Summ. J., Part 20 at 19, and he sent them to periodic training not because they were "rusty" or having a problem performing but because "[a]ny training can be beneficial to anyone in any line of work." *Id.*

There is no evidence which would indicate the existence of facts which would have alerted Pridgen that the training Gurley received from ALETA and other programs was inadequate and likely to result in a constitutional violation. Further, there is no evidence that Pridgen failed to properly supervise Gurley, or that Pridgen directly participated in any alleged constitutional violations. Therefore, Brockinton's Fourteenth Amendment claims against Gurley and Pridgen in their individual capacities should be dismissed based on qualified immunity.

### b.  Official Capacity Claims

A lawsuit against a governmental actor in his official capacity is synonymous with a suit against the entity itself. Therefore, the official capacity claims against Bradley, Pridgen, and Gurley are actually claims against the County. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005). Because the Court determines Gurley and Pridgen are entitled to qualified immunity, it need not address plaintiff's

allegation that Van Buren County has a policy, practice or pattern of entering theft reports into the ACIC system without properly investigating.  Nevertheless, the Court addresses the question of the County's liability.

In a § 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.  *Turney v. Waterbury,* 375 F.3d 756 (8th Cir. 2004).  To succeed in his claims against the County, Brockinton must prove (1) a constitutional injury, *City of Los Angeles v. Heller,* 475 U.S. 796 (1986), (2) that an "official policy or widespread custom or practice" caused the injury, *Board of County Commr's v. Brown,* 520 U.S. 397 (1997), and (3) that through "deliberate conduct" the City was the "moving force behind the injury," *id.* at 404.  The second requirement guards against holding a government body vicariously liable for the acts of all its employees, while the third requirement insures the necessary degree of culpability and causal link between official action and the deprivation of a constitutional right.  In the absence of a written policy, a plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law.  *Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 646 (8th Cir. 1990).

Sheriff Pridgen testified he did not issue any policies regarding the entry of theft reports into ACIC.  *See* Pl's. Resp. to Sherwood Defs.' Mot. Summ. J., Part 18 at  8.  As previously noted, Pridgen testified officers receive training at ALETA and learn how to investigate, determine probable cause, take theft reports, file reports, and enter reports into ACIC.  *Id.* at 12-16.

Scott Bradley succeeded Russell Pridgen as Sheriff of Van Buren County in 2003.  Sheriff Bradley testified that when an officer gets a report that property has been stolen, after seeing the bill of sale and maybe running the VIN or registration number, the property is entered into the ACIC as

stolen.  *See*  Pl's. Resp. to Van Buren County Defs.' Mot. Summ. J., Ex. D at 20, ll 5-10.  He said

he had no idea if the procedures he followed regarding stolen property were any different than

Pridgen's.  Sheriff Bradley said he does not believe he has a specific procedure for reporting

property as stolen on ACIC.

> I would have to look in my book to make sure.  But I mean you do learn it at
> ALETA, you know, you learn basic investigation skills while you're at ALETA.
> And it's pretty basic, that if you take a report and something's stolen and you believe
> it to be stolen, based on training you've received and on-the-job training, base [sic]
> on your experience that it's stolen, to go ahead and get it entered into ACIC, as quick
> as you can, in case someone meets it going down the road or to make contact with
> it, trying to locate it.

*Id*. at 21.  Deputy Gurley testified that the policy of the sheriff's department is when an officer gets

a stolen property report, if the officer has a serial number, he enters it into ACIC as stolen.  *Id.*, Ex.

H at 21-22.

Brockinton argues that this testimony shows that Van Buren County has a policy and practice

of entering reports into the ACIC system before properly investigating the claim, and such policy

violates his right to be free from unreasonable searches and seizures.  He asserts Pridgen and

Bradley failed to properly train and supervise the Van Buren County officers and, as a result, not

only was his boat unlawfully seized but his fence and truck were damaged as well.  Brockinton

asserts the Van Buren County defendants affirmatively aided in his arrest, *see* Pl's. Resp. to Van

Buren County Defs.' Mot. Summ. J., Ex. F, when they confirmed with the SPD the boat was stolen

and should be released to the registered owner.  He also claims the VBCSD's actions were a

proximate cause of his damages as it advised the SPD to release the boat to Murphy even though it

was registered to Mills.  *See id.*, Ex. G.

The Court finds there is no evidence from which a jury could find that the VBCSD's policy and practice regarding the handling of reports of stolen property violates plaintiff's Fourth and Fourteenth Amendment rights.  The testimony shows that before an item is listed as stolen with the ACIC, the officer makes a determination, based on evidence presented, such as a bill of sale, and his experience, that the property is stolen.  As Sheriff Bradley testified, time is of the essence, and officers receive basic investigative training with ALETA and on-the-job training. Plaintiff's allegations and deposition testimony fail to support a claim of a violation of due process or unreasonable search and seizure.  There is no evidence to support a finding of the existence of a pattern of persistent and widespread unconstitutional practices that had become so permanent and well-settled as to have the force and effect of law.  Therefore, plaintiff's official capacity claims against Pridgen, Bradley, and Gurley are dismissed.

**2.      Sherwood Defendants**

Pamela Murphy went to the SPD on April 14, 2002, and told SPD officers John Scott and James Calhoun that three days earlier Brockinton had stolen a boat and trailer that belonged to her and her late boyfriend, Wiley.  She said they had been stolen out of their yard in Higdon, Arkansas. According to plaintiff, Officers Scott and Calhoun, along with officers Kilgore, Cone, Bradford, Blocker, Alvis, and Paine, went to Brockinton's residence and saw the boat in question.  Brockinton was at work.  According to Brockinton, Scott and Calhoun got a warrant, entered his secure yard, towed his truck out of the way, and took the boat that night while he was at work.

Brockinton sues Sherwood Chief of Police Nicholson and Officers Scott, Kilgore, Bradford, Cone, Blocker, Alvis, and Calhoun in their individual and official capacities.  He also sues the City of Sherwood.

**a.  Individual Capacity Claims**

Plaintiff alleges Chief Nicholson is liable because his predecessor, former Chief of Police James Thomas, failed to properly train and supervise the SPD officers, and the policies he maintained resulted in the denial of plaintiff's constitutional rights to liberty, privacy, and property. Plaintiff contends Officers Scott, Kilgore, Bradford, Cone, Blocker, Alvis, and Calhoun lacked probable cause for the search and seizure warrant and the arrest warrant, and violated his due process rights when they took and disposed of his property.        The SPD defendants argue they are entitled to qualified immunity on plaintiff's Fourth Amendment claims because there was probable cause to issue the search and seizure and arrest warrants. As to his due process claim, the SPD defendants assert plaintiff had no property right in the boat at the time it was seized, and that their actions were objectively reasonable in light of the facts and law known to them at the time.

"The threshold issue in a qualified immunity analysis is whether the facts viewed in a light most favorable to plaintiff show that the state actor's conduct violated a federal constitutional or statutory right." *McClendon v. Story County Sheriff's Office,* 403 F.3d 510, 515 (8th Cir. 2005).  If the initial inquiry results in a conclusion that the officer's conduct was unconstitutional, then the second step is to ask whether the violated right was clearly established.  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a *reasonable* officer that his [or her] conduct was *unlawful* in the situation . . . confronted.'" *Id.* (internal citation omitted).

Plaintiff asserts Scott and Calhoun violated his Fourth Amendment rights by obtaining the search warrant without performing a reasonably competent investigation.  According to the testimony, Murphy came to the SPD during the late afternoon of July 14, and told Scott there was

a boat on Hillcrest Road that was stolen.   Scott said Murphy showed him a piece of paper, either the bill of sale or title to the boat, and said she had filed a theft report with the VBCSD.  Scott said he checked with VBCSD and they faxed him a copy of their report. *See* Pl's. Resp. to Sherwood Defs.' Mot Summ. J., Part 8 at 20, 22-25.  John Aldridge, who was with Murphy, told Scott the boat at plaintiff's residence was the one stolen from Murphy, *id.*, Part 9 at 44.  Penny Guess also provided Scott with a written statement that the boat at 600 Hillcrest was Wiley's and Murphy's boat because she had seen the boat and ridden in it a couple of times.  *Id.*, Part 10, Ex. G.

Scott said he then call Calhoun for assistance, and they went out to see if they could see the boat from the road, and he said they could.  *Id.*, Part 9 at 36.  According to Gail Brockinton, plaintiff's sister and next-door neighbor, at around 4:00 p.m. on July 14, 2002, she saw several SPD officers  "huddled" in front of plaintiff's house by the fence and gate area.  She said an officer knocked on her door and asked for permission to cut through her yard because he needed to go in her neighbor's yard.  When she told the officer she was plaintiff's sister, he left and rejoined the other officers.  She said about an hour later, she saw the same officer enter her backyard and attempt to climb over her dog pen fence.  When she opened her door, he climbed down and joined the others. *Id.*, Part 10, Ex. F.

Gail Brockinton said the officers stayed outside until approximately 10:00 p.m. when they cut the lock on plaintiff's gate, entered, and took the boat.  She said the boat was parked at the rear of plaintiff's lot, under a covered awning next to his house and covered with a tarp.  It was parked behind his pickup truck, and the lot at the rear of their houses is totally overgrown with trees and bushes.  She said the boat was barely visible from the street and there is no way it could be clearly viewed.  She said it is not possible to read the hull number without going into plaintiff's yard.  *Id.*

Clearly established Fourth Amendment law requires the contents of the search warrant application to be truthful "'in the sense that the information put forth is 'believed or appropriately accepted by the affiant as true.' To preclude a grant of qualified immunity, a 'warrant application [must be] so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Mueller v. Tinkham,* 162 F.3d 999, 1003 (8th Cir. 1998)(internal citations omitted). "Because this claim is premised on a Fourth Amendment violation, the court is equally obligated to adjudicate the facts from an 'on-scene perspective,' taking into consideration everything that the Defendant Officers knew at the time of the search and seizure, then evaluating the constitutionality of the Defendants' conduct from the perspective of a reasonable officer." *McClendon v. Story Co. Sheriff's Office,* 403 F.3d 510, 515 n.2 (8th Cir. 2005).

The Court finds there is no evidence from which a jury could find that Scott's belief that probable cause existed was unreasonable. He knew that on July 11, 2002, Murphy reported to the VBCSD that a boat, hull number 94B6006, a 1966 Buehler Jet, Arkansas registration number 109 AHP, being approximately 16' to 20' in length, and trailer were stolen from her residence. Murphy gave Scott a copy of the written statement she gave to the VBCSD. In her statement, Murphy said Guess, Wiley's sister, told her on July 12, 2002, that the boat was on Hillcrest Road in Sherwood, in the back yard and covered with a tarp. *See* Pl's. Resp. to Sherwood Defs.' Mot. Summ. J., Part 10, Ex. G. In addition, Aldridge identified the boat as being the one owned by Wiley and Murphy, Scott observed the boat behind a truck in plaintiff's back yard, and compared it to a photograph he had of the boat.

Brockinton argues Scott's conduct was not objectively reasonable because all he had to base his affidavit on were Murphy's unsworn statement that her boat had been stolen and statements that

the boat was at plaintiff's residence.  He asserts the bill of sale, in light of the ACIC entry showing the boat was registered to another, was not corroboration of ownership, and the ACIC "hit" merely confirmed that the boat that was reported stolen.  He contends that there is nothing in the VBCSD's report to show Murphy's claim had been investigated, and Scott did nothing to investigate  himself.  All he did was take statements from Guess and Aldridge and check the ACIC to see that the boat was reported as stolen.

The Court finds the Sherwood defendants enjoy qualified immunity on plaintiff's claim that they improperly obtained the search and seizure warrant in violation of plaintiff's Fourth Amendment rights.  Based upon the information relied on by Scott, there was probable cause to obtain the warrant.  Because there is insufficient evidence to support a valid Fourth Amendment claim against the SPD officers, it is unnecessary for the Court to address whether plaintiff's right were clearly established.  However, viewing the evidence in the light most favorable to plaintiff, the Court finds there is no genuine issue of material fact concerning whether it would have been clear to a reasonable officer that what he was doing violated plaintiff's right to be free from unreasonable searches and seizures.

Plaintiff also asserts there was no probable cause for the arrest warrant.  Plaintiff argues that when his attorney, Tom Travis, called Scott to inquire about making arrangements to surrender Brockinton, Scott did not inform Travis that he had been implicated in the theft of the boat.  Plaintiff argues that if Scott had mentioned this to Travis and asked him for more information, Brockinton could have avoided being arrested.  Instead, Scott did nothing to investigate and caused plaintiff's unlawful arrest.

"The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'  *Malley v. Briggs,* 475 U.S. 335, 341 (1986). 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Davis v. Hall,* 375 F.3d 703, 711-12 (8th Cir. 2004).  The Court finds that, viewing the evidence in the light most favorable to plaintiff, and affording him all reasonable inferences to be drawn from that evidence, no genuine issue of material fact exists regarding whether Scott's actions were unlawful, and even if unlawful, were objectively unreasonable.[9]

Plaintiff alleges the Sherwood defendants violated his right to due process by turning the boat and trailer over to Murphy before disposition of the criminal case.  The SPD defendants assert plaintiff has no property interest in the boat, and even if he did, that interest was not clearly established at the time of their conduct, and they were objectively reasonable in light of the law and the facts at the time of their action.

Plaintiff testified that Wiley never gave him the boat, and never told him to keep the boat as payment for the alleged debt.  Plaintiff testified Wiley told him to keep the boat as collateral for the loan, but he also said Wiley brought the boat to him before Brockinton loaned him the money because, according to Wiley, he did not want someone else to get it.  Plaintiff also testified that if Wiley had asked for the boat back before the loan was repaid, he would have given it to him, and that after Wiley died, Brockinton offered to return the boat to his parents.

Even assuming plaintiff had a protectable property interest in the boat, the Court finds there is no evidence from which a reasonable jury could find the SPD defendants violated his due process rights by intentionally and recklessly failing to investigate.  As noted previously, negligent conduct,

---

[9]There is nothing in the record to indicate that Calhoun applied for and/or was responsible for obtaining the search and seizure warrant or the arrest warrant.

even grossly negligent conduct, does not implicate Fourteenth Amendment protections.  Further, even if plaintiff could show there were a violation of his due process rights as to the disposal of the boat, there is no evidence to create a genuine issue of material fact as to the reasonableness of the Sherwood defendants actions at the time.  They knew the boat was reported stolen out of the VBCSD and Murphy presented a bill of sale.  Also, when they contacted the VBCSD, they were instructed to release the boat to Murphy.

As to plaintiff's claim against Chief Nicholson, there is no evidence that Nicholson was in a supervisory capacity at the time of the events at issue in this lawsuit.  Further, there is no evidence that his predecessor, Chief Thomas,  failed to properly supervise or train the offending officers or that his failure to do so resulted in the violation of plaintiff's rights.

### b. Official Capacity Claims

Plaintiff sues the City of Sherwood and the SPD officers in their official capacities as well, claiming that  Detective Scott failed to properly investigate Murphy's allegation that she owned the boat in plaintiff's yard and that it had been stolen a few days before from her residence in Van Buren County.  He contends Scott's handling of the case was consistent with the SPD's customary approach and that such conduct resulted in the violation of his constitutional rights.

As noted previously, a lawsuit brought against a governmental actor in his official capacity is the same as bringing a suit against the entity itself.  Therefore, the official capacity claims against Chief  Nicholson and the Sherwood police officers are actually claims against the City.  A municipality may be liable under § 1983 for the unconstitutional acts of its employees if some municipal policy or custom was the moving force behind the constitutional violation.  Plaintiff alleges that the unconstitutional actions of the SPD officers were the result of the SPD's failure to

adequately train and/or supervise said officers.  In their motion for summary judgment, the SPD defendants argue that plaintiff has no evidence of such a policy, pattern, or practice of unconstitutional searches and seizure and violations of due process.

Kel Nicholson, who succeeded James Thomas as Chief of Police in Sherwood, testified that the chief of police is responsible for the policies and procedures of the department.  He said there is no formal training as to how to be a theft investigator and that any certified police officer should be qualified to investigate a case.  *See* Pl's. Resp. to Sherwood Defs.' Mot. Summ. J., Part 15 at 6-8. He testified that when there is an opening for an investigator, it is posted and those who are interested are interviewed by one of three individuals.  "[T]hey would based their decisions on observing their work throughout their careers, or their interest, or their availability to do the assignment."  *Id*. at 9-10.  It would be standard practice for an immediate supervisor to review case work occasionally to see how an investigator was performing his work.  *Id*. at 10.  Nicholson testified that with respect to theft investigations and the use of ACIC, there is an class taught by ACIC, and agreed that the ACIC regulations state that a "hit" on the ACIC is not by itself probable cause to arrest someone or seize property.  *Id*. at 15-16.  While Nicholson said Scott could have done more investigating before he issued an arrest warrant for Brockinton, he thinks Scott had probable cause. *Id*. at 17-20.

The evidence shows that Murphy presented Scott with a copy of the theft report prepared by the VBCSD, that he checked ACIC to see if the boat was reported as stolen, he contacted VBCSD to confirm the boat was still considered stolen, and that Penny Guess stated she recognized the boat at plaintiff's house as being the boat in question.  According to the SPD arrest report, Murphy

provided a picture of the boat.  Scott and other officers went to plaintiff's residence and could see the right hand side of the boat and it appeared to match the picture.  *Id.*, Part 11, Ex. H.

The Court finds there is no evidence to support a finding that the City of Sherwood maintained an unconstitutional policy, practice or custom that shows a deliberate indifference to the rights of its citizens.  There is no evidence establishing that the SPD failed to train its officers such that they routinely engaged in unconstitutional conduct with regard to theft investigations.  While others may fault Scott for relying on the VBCSD's report and not performing a more extensive investigation of his own, there is no evidence of an unconstitutional policy, practice or pattern within the SPD.

3.      **State Law Claims**

As a general rule, the Court exercises its discretion under 28 U.S.C. § 1367 and retains jurisdiction over supplemental state law claims when the federal claims are dismissed.  *See* 28 U.S.C § 1367(c).  However, in *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims.  With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of plaintiffs' state law claims, the language of *Adair* is unequivocal.  Accordingly, based on *Adair,* the Court finds that plaintiffs' remaining state law claims should be dismissed without prejudice.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motions for summary judgment [docket entries 29 & 32] should be and is hereby granted.[10] Plaintiff's federal law claims are dismissed with prejudice; his state law claims are dismissed without prejudice.  Judgment will be entered accordingly.

DATED this 17th day of August 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[10]The motion to strike filed by the Sherwood County defendants [docket entry 41] is moot.